UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**KYLA THURSTON,**

    **Plaintiff,**

    **v.**

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,**

    **Defendant.**

Civil Action No. 24-2824 (JDB)

## MEMORANDUM OPINION & ORDER

A group of teenagers allegedly assaulted Kyla Thurston on a city bus. Thurston sued the bus operator, the Washington Metropolitan Area Transit Authority ("WMATA"), for negligence in not preventing the assault. The Court grants WMATA's partial motion to dismiss to the extent it challenges Count I and denies it as moot to the extent it challenges Count II.

### Factual Background

The complaint alleges the following facts, which the Court takes as true for purposes of this motion to dismiss. See Williams v. Lew, 819 F.3d 466, 472 (D.C. Cir. 2016). On October 17, 2022, Kyla Thurston boarded a WMATA bus in the District of Columbia. Compl. [ECF No. 1-3] ¶ 30. "Several older adolescents" already aboard the bus became "disruptive and threatening during the journey," causing Thurston to ask them to "calm down" and "stop cussing." Id. ¶¶ 33–34. Apparently displeased with Thurston's intervention, the teens "escalated" their rowdiness from verbal to physical, and eventually "threw objects at [Thurston] and physically attacked her, including hitting and kicking" her. Id. ¶ 35.

At some point during the altercation, Thurston "screamed" for the bus driver, Chaz Dickens, to stop the bus, "communicating the emergency nature of the situation." Id. ¶¶ 32, 37.

1

Dickens, however, "did not immediately stop the bus," activate an alarm that would have summoned law enforcement, contact WMATA's operations center, "or take other actions necessary to mitigate the emergency situation." Id. ¶ 38; see also id. ¶ 19. When Dickens eventually stopped the bus, "he failed to take any measures" to protect Thurston, permitting the teens to "forcefully eject[] her from the bus." Id. ¶ 39. Three days later, a WMATA spokesperson publicly disavowed Dickens's inaction, stating that Dickens "did not follow proper procedures" and would be subject to administrative action. Id. ¶ 41.

## Procedural Background

Thurston sued in D.C. Superior Court, raising two counts. Count I alleged WMATA's own negligence in failing to "implement[] and enforce[] . . . adequate safety procedures." Id. ¶ 43. This count accused WMATA of "[f]ailing to maintain proper security measures on its buses," as evidenced by 2021 and 2022 crime statistics the complaint recited. See id. ¶¶ 20–29, 44.

Count II, by contrast, alleged Dickens's negligence, and pinned liability to WMATA via the doctrine of respondeat superior. See id. ¶ 50. This count argued that Dickens failed to abide by WMATA policies requiring bus operators to take certain steps in the event of an assault on their buses. Id. ¶¶ 51–52.

WMATA removed the lawsuit from Superior Court to this Court and moved to dismiss the complaint in part. See Def.'s Notice of Removal [ECF No. 1]; Mot. to Dismiss [ECF No. 5] ("Mot."). The motion seeks dismissal of Count I, primarily as barred by sovereign immunity and secondarily for failure to state a claim. See Mot. at 1; Def.'s Mem. P. & A. Supp. Mot. [ECF No. 5-1] ("Mem.") at 2–8. And while WMATA notes that it is "not entirely clear" whether Count II raises a claim for WMATA's failure to train and supervise Dickens, it seeks dismissal of such a claim if it exists. See Mem. at 8–11. WMATA does not challenge Count II on any other grounds.

Thurston opposes the motion. See Pl.'s Mem. P. & A. Opp'n Mot. [ECF No. 8] ("Opp'n"). Without distinguishing between her two counts, she asserts that sovereign immunity does not bar her action because she complains only of Dickens's failure "to follow mandatory (i.e., non-discretionary and ministerial) safety policies and procedures," meaning her action implicates a "proprietary function" to which WMATA's sovereign immunity does not extend. Id. at 3, 7. And she contends she successfully states a claim of that sort because she alleges that Dickens was "required . . . to act in a certain manner during and after the assault" but failed to do so. Id. at 10. Finally, she clarifies that she "did not plead a separate claim for negligent training and supervision," rendering that part of WMATA's motion irrelevant. Id. at 11–12.

## Legal Standards

WMATA offers jurisdictional and merits-based grounds for dismissal, so its motion comes under Rules 12(b)(1) and 12(b)(6). Insofar as WMATA invokes its sovereign immunity, it seeks dismissal for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1); see Doe v. WMATA, 453 F. Supp. 3d 354, 361 (D.D.C. 2020). Insofar as it challenges the merits of Thurston's claim, it seeks dismissal for "failure to state a claim." Fed. R. Civ. P. 12(b)(6). This opinion only reaches the jurisdictional basis for dismissal, and while differences between 12(b)(1) and 12(b)(6) dismissals exist, they are irrelevant here: as there are no factual disputes, the Court treats the complaint's factual allegations as true and affords Thurston the benefit of all reasonable inferences therefrom. See Doe, 453 F. Supp. 3d at 361; Afanasieva v. WMATA, 588 F. Supp. 3d 99, 105 (D.D.C. 2022).

## Discussion

Though the parties formally are at loggerheads, they speak practically with one voice. They agree on the law: WMATA's sovereign immunity protects it from liability for torts

3

performed as part of a "governmental function" but not as part of a non-discretionary "proprietary function."  See Mem. at 3; Opp'n at 3; Burkhart v. WMATA, 112 F.3d 1207, 1216 (D.C. Cir. 1997); D.C. Code Ann. § 9-1107.01(80).  They agree on what that distinction means in practice: WMATA's failure to "take proper steps to ensure the safety of passengers" writ large is an immunized governmental function, while an individual employee's negligent failure to take non-discretionary steps to avert a specific instance of foreseeable harm is a non-immunized proprietary function.  Mem. at 5 (quoting Doe, 453 F. Supp. 3d at 360); Def.'s Reply to Opp'n [ECF No. 9] ("Reply") at 4; Opp'n at 5–6.  And they agree therefore that Thurston's Count II must survive, as it centers on Dickens's "specific" failures rather than WMATA's security-related decisions.  See Opp'n at 6–7; Reply at 2.

Indeed, it is hard to identify any disagreement at all between the parties.  Thurston devotes her opposition brief to arguing that "the bus driver's alleged failure to comply with WMATA policies" is a non-immunized propriety function.  See Opp'n at 6 (cleaned up) (quoting Afanasieva, 588 F. Supp. 3d at 109).  WMATA agrees—which is why it "did not seek dismissal" of Count II.  See Reply at 2 (emphasis in original).  As for Count I, Thurston's own arguments make quite plain that it cannot survive: While a "metro agent's failure to" intervene is not barred by sovereign immunity, WMATA's "failure to provide 'adequate security' is."  Opp'n at 7 (citing Harris v. WMATA, 490 F. Supp. 3d 295, 314, 317 (D.D.C. 2020)).  Again, WMATA agrees.  See Reply at 2–4.  And the failure to provide security is precisely what Thurston alleges in Count I.  See Compl. ¶ 43.

In litigation, stubborn disagreement is to be expected.  Less common is stubborn agreement, where the parties shake their heads "no" while speaking in harmony.  Both parties have the correct view of the law and, in all but label, the correct view of where the law leads.  The Court

4

therefore grants WMATA's motion to dismiss Count I of the complaint.  WMATA's tentative motion to dismiss Count II to the extent it raises a claim for the failure to train and supervise, see Mem. at 8, is moot because Thurston does not pursue such a claim, see Opp'n at 11–12.  Count II, otherwise unchallenged, survives.

## Conclusion

For the above reasons, WMATA's motion to dismiss is **GRANTED** to the extent it seeks to dismiss Count I and **DENIED AS MOOT** to the extent it seeks to dismiss Count II.  WMATA shall file its answer by not later than May 29, 2025.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: May 15, 2025